Cold Springs Ventures, LLC v. Gilead Scis., Inc., 2014 NCBC 10.

STATE OF NORTH CAROLINA

COUNTY OF DURHAM

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 1873

COLD SPRINGS VENTURES, LLC, a North )
Carolina Limited Liability Company; )
COMMONWEALTH VENTURES, LLC, a )
Virginia Limited Liability Company; )
ENDEAVORS VENTURE, a Florida General )
Partnership; JAMES M. STRATHMEYER; )
BRUCE J. BOEHM and JEANNIE MULLEN, )
                Plaintiffs )
                 )
          v. )
                 )
GILEAD SCIENCES, INC.; a California )
Corporation; KRYOSPHERE, INC.; a )
Georgia Corporation; L. ERIC HALLMAN; )
DOUGLAS BAKER; NEIL JONES; MICHAEL )
J. SCHEIRBEEK; JOHN O. NORTON; )
PATRIC NORTON and RYAN NORTON, )
              Defendants )

**AMENDED
ORDER ON MOTION FOR
PRELIMINARY INJUNCTION
AND
NOTICE OF HEARING**

       THIS Amended Order is filed on the court's own motion pursuant to the provisions of Rule 60(a), North Carolina Rules of Civil Procedure, to correct a clerical mistake in that Order on Motion for Preliminary Injunction and Notice of Hearing previously entered in this civil action on March 21, 2014 ("March 21 Order"). This Amended Order shall supersede the March 21 Order in all respects. The March 21 Order is WITHDRAWN.

       THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, came before the court for hearing upon Plaintiffs' request for

temporary, preliminary and permanent injunctive relief ("Motion"), contained in their Amended Complaint;[1] was so heard on March 4, 2014; and

THE COURT, after reviewing the Motion, briefs in support of and in opposition to the Motion, arguments of counsel and other appropriate matters of record, FINDS and CONCLUDES that:

### Background

1.    Defendant Gilead Sciences, Inc. ("Gilead") has joined Plaintiffs as respondents in an arbitration action ("Arbitration") pending before the American Arbitration Association ("AAA").[2]

2.    Plaintiffs are former investors, shareholders, and directors of Old Kryo, Inc. ("NC Kryo"),[3] a North Carolina corporation. In September 2010, NC Kryo entered into a contract with Gilead[4] ("Gilead Contract"), which contained a mandatory arbitration clause.[5]  In March 2011, NC Kryo entered into an agreement ("Kryo Transaction") to sell all or substantially all of its assets and business to Kryosphere, Inc. ("GA Kryo"), a Georgia corporation.[6] As part of the Kryo Transaction, NC Kryo purportedly assigned the Gilead Contract to GA Kryo.[7] Gilead contends that NC Kryo did not obtain prior written consent from Gilead for the assignment of the Gilead Contract to GA Kryo, which is required under the Gilead Contract.[8] NC Kryo was subsequently dissolved.[9] In

---

[1] In its February 11, 2014 Notice of Hearing, the court noticed Plaintiffs' request contained in their initial Verified Complaint. Plaintiffs filed an Amended Complaint on February 28, 2014, and the Amended Complaint is properly before the court.
[2] Am. Compl. ¶¶ 79-80.
[3] *Id.* ¶¶ 1-6.
[4] Ex. A to Am. Compl.
[5] Am. Compl. ¶¶ 24, 136.
[6] *Id.* ¶¶ 55, 59.
[7] *See id.* ¶ 68.
[8] *See id.*; Pls.' Mem. Supp. Req. Prelim. Inj. ("Pls.' Br.") 5; Gilead Contract.
[9] Am. Compl. ¶ 63.

October 2013, Gilead initiated the Arbitration against GA Kryo and the Plaintiffs in this action for alleged breach of the Gilead Contract.[10] The parties agree that Plaintiffs were not signatories to the Gilead Contract and normally would not be bound under the arbitration clause contained in that agreement.[11]

<u>The Core Issue -- Piercing the Veil -- The Instrumentality Rule</u>

3.  Notwithstanding that Plaintiffs did not sign the Gilead Contract, they have been named as respondents in the Arbitration. Gilead contends that Plaintiffs committed fraud and depletion of NC Kryo's resources and that they in substance are the alter ego of NC Kryo.  Gilead argues that Plaintiffs' actions and relationship with NC Kryo would expose Plaintiffs to liability to Gilead under the instrumentality rule even though Plaintiffs were not signatories to the Gilead Contract or any other arbitration agreement.[12] The "instrumentality rule" is a longstanding doctrine that enables courts to "disregard the corporate form" and "pierce the corporate veil," extending liability to individuals where "necessary to prevent fraud or to achieve equity." *Glenn v. Wagner*, 313 N.C. 450, 454 (1985) (citations omitted).

4.  Plaintiffs concede that they could be compelled to participate in the Arbitration if they are liable under the instrumentality rule.[13] Plaintiffs contend, however, that Gilead has not alleged any misconduct on Plaintiffs' part as investors and directors of NC Kryo that would subject them to such liability. Plaintiffs argue that Gilead's "bare-bone, conclusory allegations" of fraud and depletion of resources, and liability based upon an alter ego theory, are insufficient to compel Plaintiffs to participate in the

---

[10] *Id.* ¶ 79; Ex. B to Am. Compl. ("Arbitration Demand").
[11] *See* Pls.' Br. 14*;* Def. Gilead Resp. Opp. Pls.' Mot. Prelim. Inj. ("Gilead Br.") 14.
[12] *See* Arbitration Demand.
[13] Pls.' Br. 14.

Arbitration.[14] Plaintiffs thus object to their inclusion in the Arbitration and bring this civil

action seeking declaratory and injunctive relief from this court.

---

[14] *Id.* at 16.

Discussion

5.      For purposes of this Order, Plaintiffs' Motion[15] is best characterized as three separate requests for injunctive relief: (a) a request for preliminary and permanent injunctive relief enjoining Gilead from seeking to arbitrate the jurisdictional question of whether Plaintiffs are subject to arbitration,[16] (b) a request for a preliminary injunction staying the Arbitration until this court determines whether Plaintiffs are subject to the AAA's jurisdiction and (c) a request for a preliminary injunction staying the Arbitration until this court makes a final substantive determination on the merits of Gilead's contention that Plaintiffs may be liable to Gilead under the instrumentality rule.[17]

6.      Insofar as the Motion seeks preliminary injunctive relief, Plaintiffs bear the burden of persuasion. *Pruitt v. Williams*, 288 N.C. 368, 372 (1975). A preliminary injunction is an extraordinary measure that "will not be lightly granted." *Travenol Lab., Inc. v. Turner*, 30 N.C. App. 686, 692 (1976) (citation omitted). A plaintiff must show "a likelihood of success on the merits of his case and . . . [that] plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of his rights during the course of litigation." *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 466 (2003) (citations omitted).

7.      Gilead contends that it need not fully state a claim for relief in its Arbitration Demand that would meet the standards of Rule 12(b)(6), North Carolina

---

[15] *See* Am. Compl. ¶¶ 153-160.

[16] *Id.* ¶ 159.

[17] Am. Compl. ¶ 160. Plaintiffs seek an order "prohibiting Gilead from litigating its breach of contract against [NC Kryo] in the [Arbitration] until such time that this [c]ourt determines whether Gilead has a valid basis upon which to pierce [NC Kryo]'s corporate veil against [Plaintiffs]." It is unclear whether Plaintiffs' request, in referencing "whether Gilead has a valid basis," incorporates only the substantive question of whether Plaintiffs are liable or both that question and whether they are subject to the AAA's jurisdiction. The court, in its discretion, reads both requests into the Motion.

Rules of Civil Procedure ("Rule(s)") in order for the AAA properly to exercise jurisdiction over Plaintiffs.[18] Rather, Gilead argues that its stated intention "to recover from [Plaintiffs] under a veil piercing theory" compels Plaintiffs to participate in the Arbitration.[19] Gilead appears to suggest that the court cannot properly consider the instrumentality rule's applicability to this case in any way because such an inquiry would impermissibly delve into the merits of Gilead's arbitration claims against Plaintiffs.[20]

8.     As a preliminary matter, the court notes that this dispute is governed by both the Federal Arbitration Act ("FAA"), 9 USC § 1 *et seq.*, and North Carolina's Revised Uniform Arbitration Act ("NCRUAA"), G.S. 1-569.1 *et seq.* As the parties agree that the Gilead Contract is one evidencing a "transaction involving commerce" under the FAA, the FAA clearly governs the dispute. *See, e.g., Burke Co. Pub. Schs. Bd. of Ed. v. Shaver P'ship*, 303 N.C. 408, 422 (1981) ("The Federal Arbitration Act, by virtue of the Supremacy Clause, is . . . part of North Carolina law."). Nonetheless, it is also clear that some provisions of the FAA apply solely to federal courts. *See, e.g., Southland Corp. v. Keating*, 465 U.S. 1, 16 n.10 (1984) ("[W]e do not hold that §§ 3 and 4 of the [FAA] apply to proceedings in state courts. Section 4, for example, provides that the Federal Rules of Civil Procedure apply in proceedings to compel arbitration. The Federal Rules do not apply in such state-court proceedings."). As such, even when the FAA governs a dispute, state law fills procedural gaps in the FAA as it is applied in state courts. *See Carter v. TD Ameritrade Holding Corp.*, __ N.C. App. __, 721 S.E.2d 256, 260 (2012) (trial court properly considered motion to compel arbitration under G.S. 1-569.7 in

---

[18] *See* Gilead Br. 16.
[19] *Id.* at 13.
[20] *Id.* at 16.

matter governed by FAA). As such, Gilead correctly asserts that G.S. 1-569.7(b) requires this court to make a threshold determination of whether Plaintiffs can be compelled to be parties in the Arbitration. Plaintiffs' contentions that (a) the FAA is the sole governing law in this matter and (b) Gilead is estopped from arguing otherwise are both meritless.

9. Although both federal and North Carolina law favor the enforcement of arbitration provisions, each requires the existence of a valid agreement to arbitrate. *See, e.g.*, 9 USC § 2 (providing that, under the FAA, a contractual arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); G.S. 1-569.6; *Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 271 (1992) (*Routh II*) ("[B]efore a dispute can be settled [by arbitration], there must first exist a valid agreement to arbitrate.").

10. The arbitrability[21] of a dispute is "subject to independent review by the courts" unless there is "clear and unmistakable" evidence that the parties agreed to "submit the question of arbitrability to arbitration." *First Options v. Kaplan*, 514 U.S. 938, 944-47 (1995) (internal quotations and citations omitted); *see also AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986) ("[A]rbitrability . . . is undeniably an issue for judicial determination."). More specifically, the Supreme Court has held that

---

[21] "Arbitrability" concerns the question of "whether the parties agreed to arbitrate" their dispute. *First Options v. Kaplan*, 514 U.S. 938, 942 (1995). In *First Options*, the Supreme Court eloquently laid out the conceptual background of arbitrability disputes by pointing to three "layers" of disagreement in the arbitration context: (a) whether the parties agreed to arbitrate the merits of a dispute, (b) whether arbitrators or courts decide (a), and (c) the merits of a dispute. As one commentator has noted, the term itself is a source of confusion because courts use it interchangeably to refer either to disputes challenging the existence or validity of arbitration agreements as well as disputes over whether a specific subset of claims is within the scope of a valid arbitration clause. *See* Steven H. Reisberg, Article, *The Rules Governing Who Decides Jurisdictional Issues: First Options v. Kaplan Revisited*, 20 AM. REV. INT'L ARB. 159 (2009). As this dispute is better characterized as one over the existence of an agreement to arbitrate between the parties, this court refers to arbitrability with the former definition in mind.

the inquiry into whether a non-signatory is bound by an arbitration clause is one for judicial determination. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964). In that case, the Court noted that "compulsory submission to arbitration cannot precede judicial determination that [an agreement] does in fact create such a duty." *Id.* The Court went on to add that "just as [a party] has no obligation to arbitrate issues which it has not agreed to arbitrate, so *a fortiori*, it cannot be compelled to arbitrate if an arbitration clause does not bind it at all." *Id.*

11.     Therefore, this court, rather than the AAA panel, must determine whether a valid agreement to arbitrate exists, or "whether the parties agreed to arbitrate" the merits of their dispute. *First Options*, 514 U.S. at 943.  For that purpose, "when deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944.

12.     Nonetheless, the posture of this particular dispute is atypical in that regard. Here, the question is whether circumstances exist that compel non-signatories to arbitrate, that is, whether circumstances exist to support piercing the corporate veil as to one or more of the Plaintiffs. As a result, an inquiry into arbitrability in this matter is necessarily a coincidental inquiry into issues that underlie the substantive merits of Gilead's claim against Plaintiffs. When assessing arbitrability, the merits of a dispute are unquestionably beyond the scope of the court's jurisdiction. *See, e.g.*, *AT&T Techs.*, 475 U.S. at 649 ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."); *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960) ("The

courts . . . have no business weighing the merits of [a] grievance."); G.S. 1-569.7(d) (A court should not refuse to compel arbitration "because the claim lacks merit or because grounds for the claim have not been established.").

13.    Indeed, Gilead, relying on G.S. 1-569.7(d), contends that its mere allegation that the instrumentality rule applies is enough to subject Plaintiffs to the AAA's jurisdiction.[22] In essence, Gilead would have this court hold that the arbitrability of a dispute is rendered beyond the court's jurisdiction when such an assessment would require the court to consider issues that also underlie the merits of a claim.

14.    Plaintiffs, on the other hand, ask this court to resolve conclusively whether the instrumentality rule applies in this case.[23] To that end, the Motion asks this court to enjoin the entire Arbitration from proceeding pending a final determination by this court on Plaintiffs' potential liability to Gilead under the instrumentality rule.[24] Plaintiffs note that Gilead's failure in the Arbitration Demand to "allege any specific factual allegations" to support the application of the instrumentality rule would provide grounds for dismissal under Rule 12(b)(6) in a regular civil action.[25] Plaintiffs suggest that Gilead's failure to make such allegations "highlights the fact that Gilead has no evidence to support" its claim against Plaintiffs.[26] Plaintiffs further contend that they have "submitted evidence . . . through the factual allegations of their Verified Complaint . . . showing that they did not engage in any conduct" that would support Gilead's instrumentality claim.[27] Plaintiffs contend that they have thus demonstrated a likelihood of success on the

---

[22] Gilead Br. 16.
[23] *See* Am. Compl. ¶¶ 142-144.
[24] *Id.* ¶ 160.
[25] Pls.' Br. 17.
[26] *Id.* at 18.
[27] *Id.*

merits" on their claim seeking a declaration that there is no factual or legal basis for Gilead to pierce [NC Kryo's] corporate veil against them." [28] Plaintiffs further suggest that "the only way to ensure that [their] rights are fully protected is for this [c]ourt to enjoin the Aribtration [and] decide the veil piercing issue. . . ."[29]

15.     This appears to be an issue of first impression in North Carolina. However, both North Carolina and federal law provide ample guidance for the court to conclude that both parties' positions are untenable and must be rejected.

<u>Likelihood of Success on the Merits of Plaintiffs' Contentions</u>

16.     Gilead would have this court essentially hold that any shareholder or director of a corporate signatory to an arbitration clause can be compelled to arbitration by way of a claimant's bare allegation that the instrumentality rule applies. An important distinction must be drawn between [impermissible] consideration of the merits of an arbitrable claim and the threshold arbitrability inquiry that necessarily involves the same issues that underly the merits of a claim. The mere fact that certain issues could later be litigated substantively cannot on its own foreclose courts from assessing arbitrability. In such a situation, the overriding spirit of the Supreme Court's jurisprudence[30] demands that courts nonetheless address those issues for the narrow and limited purpose of determining whether a claimant seeking to compel arbitration can sufficiently allege a basis for going forward against a responding party.  As Plaintiff correctly states, though this court cannot and should not address the merits of claims that the parties have agreed to arbitrate, this court must "decide the threshold issue of *whether* the parties

---

[28] *Id.* at 19.
[29] *Id.* at 22.
[30] *See supra* ¶ 10.

*consented* to the arbitration in the first place."[31] That determination will ultimately depend upon whether Gilead can allege facts and offer evidence that Plaintiffs are deemed to have consented to arbitration by virtue of the instrumentality rule. Accordingly, Plaintiffs have met their burden of showing a likelihood of success on the merits of their contention that this court should decide the initial arbitrability issue.

Irreparable Injury

17. As concluded above, Plaintiffs are entitled to a judicial determination at this stage of whether they must remain in the Arbitration. Federal law suggests that forcing a party to arbitrate an issue absent an agreement to do so constitutes "*per se* irreparable*" harm. *Paine Webber, Inc. v. Hartmann*, 921 F.2d 507, 514 (3d Cir. 1990); *see also UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010). Therefore, the court concludes that Plaintiffs have satisfied their burden for injunctive relief on this issue.

18. The court concludes therefore that on the narrow question of whether Gilead can compel Plaintiffs to be parties to the Arbitration, Plaintiffs' Motion should be GRANTED, in part, as reflected in this Order.

19. However, the court further concludes that Plaintiffs cannot prevail in their request that the Arbitration be stayed until the court conclusively determines whether Plaintiffs can be liable to Gilead under the instrumentality rule. The standards of Rule 12(b)(6) are not controlling in this situation, and on the limited record before it, this court is not able to conclude that Plaintiffs have demonstrated a likelihood of success on the merits of their substantive claim opposing application of the instrumentality rule. In

---

[31] Pls.' Rep. Def. Gilead Resp. Pls.' Mot. Prelim. Inj. ("Pls.' Rep.") 3 (citing *First Options,* 514 U.S. at 943).

addition to the fact that the court concludes that it does not presently have jurisdiction to affirmatively determine the instrumentality issue on the merits, it is not clear that the court will ever have that jurisdiction.[32] The court cannot, and should not, enjoin the arbitration in its entirety pending a determination that it lacks the authority to make at this stage.

20.     Plaintiffs argue that should this court not enjoin the Arbitration until there is a substantive determination of the instrumentality rule issue in the trial court, they could later be held liable "on some as yet unknown basis."[33]  The court is sensitive to Plaintiffs' concerns that a preliminary determination that Plaintiffs cannot be compelled to arbitration, without a corresponding resolution on the merits of the instrumentality rule issue, might put Plaintiffs in an awkward "Catch-22"[34] situation. For example, if the Arbitration goes forward without Plaintiffs as parties and results in a substantial judgment in favor of Gilead against NC Kryo, later may face – either in this action or another action – a claim at law by Gilead that pursuant to the instrumentality rule, Plaintiffs are liable for that judgment.  If this risk is a sufficient concern to Plaintiffs, they are free to take a Rule 41 voluntary dismissal of their declaratory judgment claims and defend at the Arbitration if they so choose. However, Plaintiffs' concerns, while potentially real, do not confer jurisdiction on this court that it otherwise lacks.

---

[32] Even if Plaintiffs prevail on the question of arbitrability and are removed from the Arbitration, it is unclear whether this court could properly consider a declaratory judgment action on this issue prior to the Arbitration's resolution, if at all. *See, e.g.*, *Lide v. Mears*, 231 N.C. 111 (1949) (G.S. 1-253 requires an "actual controversy" and prohibits advisory opinions.); *Sharpe v. Park Newspapers of Lumberton*, 317 N.C. 579, 585 (1986) (G.S. 1-253 requires that "an actual controversy exists both at the time of the filing of the pleading and at the time of hearing.") (citations omitted); *Tryon v. Power Co.*, 222 N.C. 200, 204 (1942) (G.S. 1-253 prohibits trial courts from issuing "a purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise.") (citations omitted).
[33] Pls.' Br. 22.
[34] Joseph Heller, Catch-22 (1961).

21.     Therefore, the court CONCLUDES that to the extent Plaintiffs' Motion seeks to enjoin the Arbitration until this court makes a conclusive determination on the merits as to Plaintiffs' liability under the instrumentality rule, it should be DENIED.

## Procedure Going Forward

22.     Under G.S. 1-569.7(b), "[o]n motion of a person alleging that an arbitration proceeding has been initiated . . . but that there is no agreement to arbitrate, the court shall proceed summarily to decide the issue." Defendants do not challenge the contention that the court should summarily decide the issue of arbitrability.  However, given the unusual procedural posture of this matter, the court deems it appropriate to clarify suitable procedure moving forward in light of the requirement that it "summarily . . . decide the issue." G.S. 1-569.7(b).[35]

23.     G.S. 1-569.7 is titled "Motion to compel or stay arbitration" and G.S. 1-569.5(a) provides that "an application for judicial relief under [the NCRUAA] shall be made by motion to the court and heard in the manner provided by law or rule of court for making and hearing motions."  It has similarly been noted that the statute "clearly requires a 'motion' to be filed in the trial court." *Linsenmayer v. Omni Homes, Inc.*, 193 N.C. App. 703, 706 (2008) (*quoting* G.S. 1-569.7). *See also Adams v. Nelsen*, 313 N.C. 442, 447 (1985) ("The Court of Appeals correctly concluded that the proper procedure for staying litigation and compelling arbitration is by a proper motion." (assessing predecessor statute)). Thus, the proper mechanism for Plaintiffs to seek relief from the court is a motion to stay arbitration. A court's ruling under the statute constitutes a final

---

[35] The cases addressing G.S. 1-569.7 and its predecessors mostly concern motions to compel rather than, as in this case, a separate declaratory judgment action filed by the resisting party in a collateral attack on the arbitration's jurisdiction.

determination of arbitrability, and an order granting a motion to permanently stay arbitration (or denial of a motion to compel) is immediately appealable. *See, e.g.*, G.S. 1-569.28; *Bennish v. North Carolina Dance Theater, Inc.*, 108 N.C. App. 42 (1992) ("[A] trial court's order denying arbitration, although interlocutory, is immediately appealable because it involves a substantial right which might be lost if appeal is delayed.") (internal quotations and citations omitted); *Sims v. Ritter Constr., Inc.*, 62 N.C. App. 52 (1983).

24.     In its February 11, 2014 Notice of Hearing, the court noticed Plaintiffs' requests for temporary, preliminary, and permanent injunctive relief contained in their Fourth Cause of Action[36] ("Claim Four"). In Claim Four, Plaintiffs allege, among other things, that they are "entitled to temporary and preliminary injunctive relief prohibiting Gilead from litigating its breach of contract against [NC Kryo] in the Aribtration Proceeding until such time that this Court determines whether Gilead has a valid basis upon which to pierce [NC Kryo's] corporate veil against [Plaintiffs]."[37] On the other hand, in their First Cause of Action[38] ("Claim One"), Plaintiffs seek a declaratory judgment under G.S. 1-253. There, Plaintiffs ask this court for an order declaring, in part, that they "are not bound by the arbitration provision in the Gilead Contract" and, similarly, that the "AAA has no jurisdiction over Plaintiffs with regard to any disputes arising out of the Gilead Contract."[39]

25.     Therefore, Plaintiffs' Motion presently before this court is best characterized as a motion to stay temporarily the Arbitration pending a final

---

[36] Am. Compl. ¶¶ 153-160.
[37] *Id.* ¶ 160.
[38] *Id.* ¶¶ 135-141.
[39] *Id.* ¶ 141(b)-(c).

determination by the court on whether Plaintiffs can be compelled to arbitrate. By contrast, though not fashioned as such, Plaintiffs' First Claim is functionally the same as a motion to stay arbitration under G.S. 1-569.7(b) and will be treated as such when the court ultimately addresses it.[40],[41]

26. The sole remaining issue presently before this court is whether, and to what extent, Plaintiffs are entitled to preliminary injunctive relief staying the Arbitration pending the outcome of their Declaratory Action to Stay Arbitration.

27. Plaintiffs, as movants, technically bear the burden of persuasion here. However, under both state and federal law, the party seeking to compel arbitration bears the "burden of establishing an agreement to arbitrate." *Routh II*, 108 N.C. App. at 274. *See also General Ass'n of Regular Baptist Churches v. Scott*, 2013 U.S. App. LEXIS 23099 (7th Cir. 2013) (unpublished) ("[A] party seeking to compel arbitration must show a valid arbitration agreement"). Gilead has yet to make specific allegations, or otherwise make a showing in this court, on which Plaintiffs might be held liable under the instrumentality rule. If the Rules were to govern the Arbitration pleadings, given the sparse and conclusory allegations contained in the Arbitration Demand, Plaintiffs would have shown a likelihood of success on the merits as to the limited question of whether Gilead can compel arbitration as to Plaintiffs via the instrumentality rule. To find otherwise essentially would require Plaintiffs to prove a negative. Although the Rules do not govern the Arbitration, and Gilead's allegations in the Arbitration Demand are not

---

[40] The court will hereinafter refer to the requests contained at Am. Compl. ¶ 141 (b)-(c) as Plaintiffs' "Declaratory Action to Stay Arbitration." The court will hold the declaratory request contained at Am. Compl. ¶ 141(a) in abeyance.

[41] Although Plaintiffs have asserted their right to trial by jury, under G.S. 1-253 the court may determine a motion to stay arbitration on its own if it is purely a question of law. *See, Hall v. Hall*, 35 N.C. App. 664 (1978) (citing *Iowa Mut. Ins. Co. v. Fred M. Simmons, Inc.*, 258 N.C. 69 (1962), for the proposition that the court may determine questions of law under GS 1-253 notwithstanding a jury demand).

held to the pleading standards of the Rules, the court concludes that justice requires further inquiry into whether Gilead's allegations and appropriate evidentiary showing support the contention that Plaintiffs can be compelled into the Arbitration.

28.     Further, depending on when the Motion is resolved by this court, and when the Arbitration proceeding actually takes place, it also is likely that Plaintiffs may suffer irreparable harm, especially if the Arbitration were to proceed before this court makes a determination on the issue of whether Plaintiffs can be compelled to arbitrate. Given representations of counsel for Gilead that the Arbitration proceeding is not likely to occur within the next four months, the court concludes, and the ends of justice dictate, that a short delay in the Arbitration is appropriate and will not materially prejudice the rights of either Defendants or Plaintiffs while the court determines whether Plaintiffs can be compelled to be parties to the Arbitration.  For that reason, the court, as a matter of law and in the exercise of its discretion, CONCLUDES that to the limited extent the Motion requests a preliminary stay of the Arbitration pending determination of whether Plaintiffs can be compelled to be parties to the Arbitration, the Motion should be GRANTED.

29.     Under G.S. 1-569.7(b), the court is tasked with 'summarily' rendering a final determination on whether Gilead can show a sufficient basis to require Plaintiffs to join the Arbitration.  For the reasons discussed above, this limited inquiry is undertaken for the sole purpose of determining whether pursuant to the instrumentality rule, Plaintiffs can be bound by the arbitration clause in the Gilead Contract.  As it is impossible for the court to reach appropriate findings and conclusions on this matter

with the limited record before it, evidence will have to be considered. The burden of proof will be upon Gilead.

30. Little guidance exists on the precise contours of the court's inquiry under G.S. 1-569.7. Our Court of Appeals has made clear, however, that the application of a summary judgment standard is inappropriate. *Routh v. Snap-On Tools Corp.*, 101 N.C. App. 703, 706 (1991) (*Routh I*). There, analyzing a predecessor statute with similar language, the court held that the trial court "failed to comply with the statute" when it "applied a summary judgment standard of whether there was a genuine issue of material fact with regard to the validity and enforceability of [the agreement]." *Id.* (internal quotations omitted). Instead, the court is required "to summarily determine whether, as a matter of law, a valid arbitration agreement exists." *Id.*

31. On at least one prior occasion, this court has allowed limited discovery prior to determining a G.S. 1-569.7(a) motion to compel arbitration. *See Capps v. Blondeau*, 2010 NCBC 7 at *5 (N.C. Super. Ct. 2010) ("On May 2, 2008, the court entered an Order permitting the parties to conduct discovery limited to the issues of (a) whether a valid agreement to arbitrate exists, and if so (b) whether the agreement is unconscionable.") (internal quotations and citations omitted). *See also Capps v. Blondeau*, 07 CVS 16486 (May 2, 2008) (order granting a motion for pre-arbitration discovery). Federal courts have also found it appropriate to allow limited discovery in similar circumstances. *See, e.g., Clutts v. Dillard's, Inc.*, 484 F. Supp. 2d 1222, 1225-26 (D. Kan. 2007); *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494 (7th Cir. 2003); *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 n.5 (3d Cir. 2013) ("[A]ny time the court must make a finding to determine arbitrability, pre-arbitration discovery may be

warranted."). In *McCrary v. Byrd*, our Court of Appeals held that it was not an abuse of the trial court's discretion to allow a party to complete discovery efforts before ruling on a motion to compel arbitration, "particularly since those efforts began prior to plaintiffs' motion to compel arbitration." 136 N.C. App. 487, 492-93 (2000) (emphasis omitted). In that case, the defendants contended that the plaintiffs waived the right to compel arbitration. *Id.* The Court of Appeals noted that while "the trial court should rule on the motion . . . without undue delay, some delay [was] inherent" because an evidentiary hearing was required on the issue. *Id.* at 491. While this matter does not require an evidentiary hearing, the interests of justice are best served by allowing brief discovery before considering Plaintiffs' Declaratory Action to Stay Arbitration.

32.    Equity and precedent dictate that a party opposing arbitration may not use judicial discovery procedures to obtain discovery regarding the substance of an arbitrable dispute. *See generally Cyclone Roofing Co. v. David M. LaFave Co.*, 312 N.C. 224 (1984). Consequently, discovery undertaken prior to determination of the Motion should be limited to the specific issue of whether Plaintiffs' involvement with NC Kryo and the Kryo Transaction could expose them to liability under the instrumentality rule and thus confers jurisdiction over them upon the AAA.

NOW THEREFORE, based on the foregoing FINDINGS and CONCLUSIONS, it hereby is ORDERED that:

1.    To the extent the Motion asks this court to stay the Arbitration pending a substantive ruling on whether Plaintiffs may be found liable to Gilead under the instrumentality rule, the Motion is DENIED.

2. To the extent the Motion asks this court to exercise its exclusive jurisdiction to rule on whether Plaintiffs may be compelled to be parties to the Arbitration under G.S. 1-569.7(b), the Motion is GRANTED.

3. To the extent the Motion asks this court to stay the Arbitration pending the court's ruling on the jurisdictional issue of whether Plaintiffs may be compelled to be parties to the Arbitration, the Motion is GRANTED. Accordingly, until further order of this court, the Arbitration is STAYED, and Defendants are ENJOINED from attempting to arbitrate the issue of whether Plaintiffs are bound by the Gilead Contract's arbitration provision.

4. To the extent the Motion asks this court to enjoin the Arbitration pending the substantive outcome of Plaintiffs' Declaratory Action to Stay Arbitration, the Motion is DENIED.

5. Except as specifically granted herein, the Motion is DENIED.

6. Prior to a hearing on the issue of whether Plaintiffs may be compelled to be parties to the Arbitration, the parties shall be allowed to take limited discovery. Such discovery shall be limited to the threshold issue of whether Plaintiffs can be compelled to be parties to the Arbitration under the instrumentality rule for purposes of NC Kryo's alleged breach of the Gilead Contract.

7. The discovery allowed by this Order shall be completed no later than Monday, May 12, 2014. The parties are cautioned to plan and propound any discovery initiatives with a view toward allowing a responding party sufficient time for a good faith response to such discovery before expiration of the foregoing deadline.

8. The court does not intend to micro-manage discovery in this action, and has not undertaken to define the scope or breadth of specific discovery allowed by this Order, except as stated above. In the spirit of Rule 26(f) and Rule 18.6(a) of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR"), the parties are directed to confer with each other in a good faith effort to reach agreement on planning the nature and scope of discovery that will be undertaken pursuant to this Order. If the parties are unable to agree, they may apply to the court for appropriate relief.

9. Upon completion of the above discovery, the parties may file post-discovery briefs in support of their respective positions as follows:

(a) On or before Monday, May 19, 2014, Defendants shall file their brief, if any, in opposition to Plaintiffs' Declaratory Action to Stay Arbitration.

(b) On or before Monday, May 26, 2014, Plaintiffs shall file a responsive brief, if any, in support of their Declaratory Action to Stay Arbitration.

(c) On or before Friday, May 29, 2014, Defendants shall file a reply brief, if any, in opposition to Plaintiffs' Declaratory Action to Stay Arbitration.

10. Briefs shall address only the issue of whether Plaintiffs can be compelled to be parties to the Arbitration under the instrumentality rule for purposes of NC Kryo's alleged breach of the Gilead Contract, and shall be limited in length to the standard specified under BCR Rule 15.8.

11. This matter will come before the court for a hearing on Plaintiffs' Declaratory Action to Stay Arbitration on Wednesday, June 4, 2014, beginning at 2:00 p.m. at the North Carolina Business Court, 225 Hillsborough Street, Suite 303, Raleigh.

The hearing will be limited to the issue of issue of whether Plaintiffs can be compelled to be parties to the Arbitration under the instrumentality rule for purposes of NC Kryo's alleged breach of the Gilead Contract. The court will receive arguments and evidence on the issue as may be appropriate.

12. This Order shall be effective immediately. Pursuant to the provisions of Rule 65(c), on or before Tuesday, March 25, 2014, Plaintiffs shall post an injunction security bond in the amount of $5,000 with the Clerk of Superior Court of Durham County.

13. Plaintiffs forthwith shall serve a copy of this Order upon the AAA.

This the 26th day of March, 2014.