DONALD RAY ROUTH, AND PENNY C. ROUTH, APPELLEES v. SNAP-ON TOOLS CORPORATION, TRACE S. DENGLER, III, INDIVIDUALLY AND AS A BRANCH MANAGER OF SNAP-ON TOOLS CORPORATION; MARK TROMBLEY, INDIVIDUALLY AND AS A FIELD MANAGER OF SNAP-ON TOOLS CORPORATION; AND ED BONGE, JR., INDIVIDUALLY AND AS A SALES MANAGER OF SNAP-ON TOOLS CORPORATION, APPELLANTS

No. 9021SC371

(Filed 19 February 1991)

1. **Arbitration and Award § 2 (NCI4th) — arbitration — validity of agreement — standard to be applied**

     In an action arising from the termination of a Snap-On Tools dealership in which defendants raised an arbitration agreement as a defense, the trial court failed to comply with N.C.G.S. § 1-567.3(a) in that the judge applied a summary judgment standard to the validity and enforceability of the agreement rather than summarily determining as a matter of law whether a valid arbitration agreement existed.

     **Am Jur 2d, Arbitration and Award § 20.**

2. **Appeal and Error § 418 (NCI4th) — arbitration agreement — judgment on pleadings denied — no assignment of error — dismissed**

     Defendants' claim that a trial court erred by not entering judgment on the pleadings on the basis of arbitration language

in a termination agreement was dismissed where defendants did not assign error to the issue. N. C. Rules of Appellate Procedure, Rule 10.

**Am Jur 2d, Appeal and Review § 649.**

APPEAL by defendants from an order rendered 12 February 1990 by *Judge Samuel T. Currin* in FORSYTH County Civil Superior Court. Heard in the Court of Appeals 3 December 1990.

*Blanchard, Twiggs, Abrams & Strickland, by Howard F. Twiggs and Donald R. Strickland, for plaintiff-appellees.*

*Petree, Stockton & Robinson, by Thomas E. Graham and Rodrick J. Enns, for defendant-appellants.*

LEWIS, Judge.

The issues addressed on appeal in this case are whether the trial judge erred: 1) in failing to determine whether a valid arbitration agreement exists pursuant to N.C.G.S. § 1-567.3(a), and 2) in failing to conclude as a matter of law that there is a valid agreement requiring the case to be sent to arbitration.

In January of 1986 plaintiff Donald Routh (hereinafter "plaintiff") contracted with the defendant Snap-On Tools Corporation (hereinafter "Snap-On Tools") to become a Snap-On Tools dealer. Plaintiff invested thousands of dollars and incurred large debts for his dealership. Defendant Dengler was the branch manager of the office for Snap-On Tools in Charlotte, North Carolina. Defendant Trombley was a field manager for Snap-On Tools working out of the Charlotte office. Defendant Bonge was a sales manager for Snap-On Tools also working out of the Charlotte office. Plaintiff operated as a dealer for Snap-On Tools and communicated primarily with defendants Dengler, Trombley and Bonge. Plaintiff's dealership was not profitable and he contacted defendants to end his relationship.

In November of 1987, when the plaintiff terminated his dealership, he signed a "termination agreement." The termination agreement provides in part:

This Agreement extends to: agents, heirs, employees and officers of either party to this Agreement. It is effective as of the above date and it supersedes any and all prior agreements,

**ROUTH v. SNAP-ON TOOLS CORP.**

[101 N.C. App. 703 (1991)]

which are now cancelled. If any dispute arises over the terms of this Agreement, the parties will submit to final and binding arbitration as the sole method of resolving the controversy. The request for arbitration must be filed in writing within one (1) year of the above date or all claims, known or unknown, are forever waived. The rules of the American Arbitration Association shall apply, and the terms of this Agreement shall govern. The prevailing party shall be awarded reasonable costs and fees.

Except as above, both parties to this Agreement freely waive any and all claims they may have against each other arising out of the Dealership terminated by this Agreement. The Dealer agrees that fair consideration has been given by the Company for this Agreement and fully understands this complete release of claims and the negotiated terms of this Agreement. Both parties to this Agreement understand that each might have present claims against the other which are at this time still unknown. In the joint interest of achieving a complete and final resolution as to the Dealership, any such unknown claims are also extinguished by this Agreement.

Plaintiff signed the form on a line drawn at the bottom of the agreement after an additional sentence referring to how the plaintiffs were to pay the balance they owed Snap-On Tools. Defendant Dengler signed the agreement as a branch manager of Snap-On Tools.

On 7 March 1989, the plaintiff and his wife filed a complaint against the defendants alleging: 1) fraudulent misrepresentation and concealments in inducing the plaintiff to become a Snap-On Tools dealer, 2) unfair and deceptive trade practices, 3) negligent misrepresentation, 4) intentional infliction of emotional distress, 5) negligent infliction of emotional distress, 6) breach of contract, 7) breach of covenant of good faith and fair dealing, and 8) loss of consortium. In their answer, defendants denied the allegations and claimed affirmative defenses including the following: 1) the termination agreement by its terms releases all claims arising out of the dealership, and 2) the plaintiff did not request arbitration within one year as required by the agreement.

After initial discovery, the defendants made a motion for judgment on the pleadings and an alternative motion to compel arbitration. The trial judge denied both motions. The order provides in pertinent part:

ROUTH v. SNAP-ON TOOLS CORP.

[101 N.C. App. 703 (1991)]

Upon defendants' Motion for Judgment on the Pleadings and Alternative Motion to Compel Arbitration, and after reviewing written briefs on behalf of all parties and depositions and other evidence of the record, and after hearing oral arguments in support of and in opposition to the motions, the Court concludes *that it cannot say at this stage of the proceedings that there is no genuine issue of material fact with regard to the validity and enforceability of the Termination Agreement* relied upon by defendants including the release and the arbitration clause contained therein.

(Emphasis added).

[1] The first issue before this Court is whether the trial court erred in failing to determine whether a valid arbitration agreement exists. North Carolina General Statute § 1-567.3(a) provides:

On application of a party showing an agreement described in G.S. 1-567.2; and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, *the court shall proceed summarily to the determination of the issue so raised* and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

N.C.G.S. § 1-567.3(a). (Emphasis added). The defendants argue that by the plain terms of the statute the judge is required to summarily determine whether a valid arbitration agreement exists. We agree. *See Blow v. Shaughnessy*, 68 N.C. App. 1, 18, 313 S.E.2d 868, 877, *disc. rev. denied*, 311 N.C. 751, 321 S.E.2d 127 (1984). Here the judge failed to comply with the statute. The trial judge applied a summary judgment standard of whether there was a "genuine issue of material fact with regard to the validity and enforceability of the Termination Agreement." Instead, the judge is required to summarily determine whether, as a matter of law, a valid arbitration agreement exists. Therefore, we remand this case for the trial judge to proceed summarily to the determination of the issue of whether a valid arbitration agreement exists.

[2] The defendants also claim that the trial court erred in failing to enter judgment on the pleadings on the grounds that the termination agreement is valid as a matter of law and bars the plaintiffs' claim. The defendants did not assign error to this issue. We

dismiss this claim under Rule 10 of the North Carolina Rules of Appellate Procedure.

Reversed and remanded.

Chief Judge HEDRICK and Judge WYNN concur.