IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-703

Filed: 3 April 2018

Mecklenburg County, No. 16-CVS-3696

IO MOONWALKERS, INC., and AMERICAN COINS & GOLD, INC., Plaintiffs,

v.

BANC OF AMERICA MERCHANT SERVICES, LLC, BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., and FIRST DATA MERCHANT SERVICES, LLC, Defendants.

Appeal by plaintiffs from order entered 27 March 2017 by Judge Lisa C. Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 November 2017.

> *Pinto Coates Kyre & Bowers, PLLC, by Jon Ward and Richard L. Pinto, for plaintiffs-appellants.*
>
> *Lord Law Firm, PLLC, by Harrison A. Lord, for defendants-appellees.*

DIETZ, Judge.

This case is one of a growing number of contract cases requiring the courts to fit decades-old (sometimes centuries-old) contract principles to the realities of the digital age.

Banc of America Merchant Services, LLC (BAMS) provided credit card processing services to IO Moonwalkers, Inc., a company that sells hoverboard scooters. BAMS uses a standard contract with its customers and sent that contract to Moonwalkers using an electronic document application called DocuSign. DocuSign

transmits the contract in an email and the software records when the contract accompanying that email is viewed and when it is electronically signed.

After a dispute concerning chargebacks for fraudulent purchases, Moonwalkers asserted that it never electronically signed the contract with BAMS and should not be bound by its terms. The company asserted that a salesperson for BAMS likely signed the contract on behalf of Moonwalkers without permission.

At summary judgment, BAMS produced records showing the exact date and time that someone using the Moonwalkers company email viewed the proposed contract, electronically signed it, and later viewed the final, fully executed version. Moonwalkers does not dispute the accuracy of these DocuSign records, and does not claim that it never viewed the proposed contract, but insists that the contract was not signed by anyone at the company authorized to do so.

BAMS also produced emails and letters sent in the following months in which BAMS referenced the contract and asked Moonwalkers to take action required by the contract, such as providing documentation. Moonwalkers complied with those requests without ever suggesting the parties had no written contract.

As explained below, in light of this evidence, the trial court properly held that, even if Moonwalkers did not sign the contract, the company ratified the contract through its actions. We therefore affirm the trial court's grant of partial summary judgment based on the doctrine of ratification.

**Facts and Procedural History**

Plaintiffs IO Moonwalkers, Inc. and American Coins & Gold, Inc. are distinct corporations with shared ownership but unrelated businesses. Moonwalkers sells hoverboards and American Coins & Gold sells metals, gemstones, and jewelry. Third-Party Defendant Rilwan Hassan owns both companies.

Defendant Banc of America Merchant Services, LLC processes credit card transactions for retail businesses.[1] The company uses an electronic signature service called DocuSign to enter into written contracts with its customers that BAMS calls "merchant services agreements." DocuSign gives each merchant services agreement an identifying number, which then appears on each page of the document. DocuSign sends an email with an electronic link to a copy of the agreement. Through DocuSign, the party viewing the contract can sign it using a digital signature. DocuSign tracks the date and time when the contract is sent, viewed, and signed by each party.

Once a contract between BAMS and a customer is executed, DocuSign sends a "certificate of completion" to BAMS that includes the identifying number for that contract, the email address of the contract recipient, the IP address of the computer that viewed the email and contract, and details of relevant "events" that occurred such as the time and date when the contract was viewed and signed. BAMS maintains

---

[1] For ease of reading, we refer to Banc of America Merchant Services, LLC and its affiliated co-defendants collectively as "BAMS."

these certificates of completion as business records in the ordinary course of its business.

Rilwan Hassan, the owner of Moonwalkers, is familiar with the DocuSign process because he used the service in 2014 to contract with BAMS for credit card processing services for American Coins & Gold, another business he owns. Hassan concedes that he used DocuSign to review and sign the BAMS contract with American Coins & Gold.

In 2015, Hassan met with BAMS employee Robert Kanterman to contract for similar card-processing services for Moonwalkers. Moonwalkers concedes that BAMS sent proposed merchant services agreements to Moonwalkers at the company email address Hassan provided. Those contracts contain various terms concerning BAMS services as well as a provision permitting the execution of the contract by electronic signatures.

Hassan stated in an affidavit that he "may have glanced at some of those emails" but he could not recall if he looked at all of them. DocuSign's electronic records indicate that someone with access to the Moonwalkers email account viewed the emails and corresponding contracts sent by DocuSign, and then electronically signed the contracts several minutes later. DocuSign later sent copies of the fully executed contracts to the Moonwalkers email account and, again, someone with access to that email account viewed the completed contracts. In an affidavit, Hassan

asserts that he believes Robert Kanterman, the BAMS employee with whom he negotiated the contract, electronically signed Hassan's name on the contracts on behalf of Moonwalkers without Hassan's permission. The affidavit provides no explanation of how Kanterman could have accessed the Moonwalkers email account or altered the DocuSign records to make it appear as if someone with access to that account viewed and signed the contracts.

Once BAMS received the certificate of completion for the merchant services agreements with Moonwalkers, it began providing credit card processing services to the company. Several months later, after a series of transactions involving stolen credit card numbers, BAMS issued "chargebacks" to Moonwalkers, which occur when a credit card holder reports that a particular credit card purchase resulted from fraud. Under the terms of BAMS's merchant services agreements, BAMS requires the retail merchant to repay BAMS the funds from the fraudulent purchase. The chargebacks in this case were extensive and posed a significant financial challenge to Moonwalkers.

Ultimately, Moonwalkers sued BAMS and its affiliated companies and BAMS countersued. After discovery, BAMS moved for partial summary judgment on the ground that Moonwalkers was bound by the merchant services agreements and that the terms of those contracts disposed of many of the claims and defenses in this case. The trial court entered partial summary judgment against Moonwalkers and certified

its partial summary judgment for immediate appellate review under Rule 54(b).[2]

Moonwalkers timely appealed.

## Analysis

This Court reviews the grant of a partial motion for summary judgment *de novo. In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). Partial summary judgment is appropriate on an issue when there is no genuine dispute as to any material fact and the court may therefore rule on the issue as a matter of law. *Id.*

In the trial court, BAMS relied on a number of legal theories to support its motion for partial summary judgment. As explained below, the trial court properly entered judgment based on the doctrine of ratification and we therefore address that legal theory first.

In contract law, ratification is a legal doctrine that binds a principal to certain unauthorized acts of an agent, such as executing a contract. *Carolina Equip. & Parts*

---

[2] The concurring opinion notes that the trial court's Rule 54(b) certification failed to expressly state that there was "no just reason for delay." In *Oestreicher v. American Nat'l Stores, Inc.*, 290 N.C. 118, 225 S.E.2d 797 (1976), our Supreme Court held that a certification that expressly references Rule 54(b) is sufficient to confer jurisdiction if the "no just reason for delay" language is omitted due to inadvertence. The Court explained that "it seems to us that justice requires that the appeal be allowed despite the fact that the trial judge failed to enter the words 'there is no just reason for delay' in his judgment. This omission could have very well been an inadvertence on the part of the trial judge. He certainly intended that plaintiff be permitted to appeal, or otherwise he would not have entered the appeal entries on account of the language of Rule 54(b) and would have required plaintiff to seek certiorari." *Id.* at 129, 225 S.E.2d at 804–05. Here, too, the trial court's order expressly referenced Rule 54(b). And the transcript of the proceedings, as well as the language of the court's order, indicate that the trial court intended to make the necessary finding concerning "no just reason for delay" but inadvertently failed to do so. Accordingly, we have appellate jurisdiction to review the challenged order.

*Co. v. Anders*, 265 N.C. 393, 400, 144 S.E.2d 252, 257 (1965). "In order to establish the act of a principal as a ratification of the unauthorized transactions of an agent, the party claiming ratification must prove (1) that at the time of the act relied upon, the principal had full knowledge of all material facts relative to the unauthorized transaction, and (2) that the principal had signified his assent or his intent to ratify by word or by conduct which was inconsistent with an intent not to ratify." *Id.* at 400–01, 144 S.E.2d at 258 (citation omitted).

"Intent to ratify can be evidenced by a course of conduct on the part of the principal which reasonably tends to show an intention on his part to ratify the agent's unauthorized acts." *Carter v. TD Ameritrade Holding Corp.*, 218 N.C. App. 222, 229, 721 S.E.2d 256, 262 (2012). "[T]o constitute ratification as a matter of law, the conduct must be consistent with an intent to affirm the unauthorized act and inconsistent with any other purpose." *Id.*

Moonwalkers argues that the trial court could not enter summary judgment on the issue of ratification because there were genuine issues of material facts. Specifically, Moonwalkers argues that it did not sign the contracts and that it believes an employee of BAMS signed the contracts without authorization. Moonwalkers also argues that it did not have knowledge of the terms of the contracts and did not take any action indicating intent to ratify the unauthorized assent.

Were this a more traditional contract negotiation, in which the parties had mailed proposed contracts back and forth, a sworn affidavit stating that Moonwalkers never reviewed or signed the contracts might be sufficient to create a genuine issue of material fact with respect to the knowledge element of ratification. But this case is different because BAMS presented evidence from the DocuSign records indicating that it sent the merchant services agreements to Moonwalkers at the company email address. BAMS also submitted evidence from the DocuSign records that someone with access to that email viewed both the emails and the accompanying contracts, electronically signed them, and later viewed the completed contracts, which were sent to Moonwalkers in a separate email.

Simply put, the electronic trail created by DocuSign provides information that would not have been available before the digital age—the ability to remotely monitor when other parties to a contract actually view it.

Moonwalkers disputes many facts alleged by BAMS but, notably, the company does not dispute the accuracy of the DocuSign records. In his first affidavit, Hassan states that Moonwalkers received many emails from Bank of America and its affiliated companies and that "some of the communications Bank of America has sent me appear to be of a general or not urgent nature, and I have not always reviewed those communications closely." He also states that "Robert Kanterman sent me various emails containing proposed merchant service agreements related to IO

Moonwalkers. I may have glanced at some of those emails, but I do not recall whether I even looked at all of them or not."

In his second affidavit, Hassan further states that "the so-called 'signed' contracts that were sent to me came from an email account for 'Contract Management Services' rather than any email for any of the Defendants in this case." He explains that "I received an excessive amount of emails from Bank of America, many of which were not related to this issue. At no point, was I under the impression that any of those emails would create a contract between me and any of the Defendants in this case for merchant services."

Missing from Hassan's two lengthy affidavits is any assertion that the DocuSign records are incorrect or that no one from the company actually viewed the emails and accompanying contracts, as the DocuSign records indicate. To be sure, Hassan's affidavit states that Moonwalkers never *signed* those contracts and that the company never *intended* to be bound by them. But Hassan does not assert that the company never *received* or *reviewed* the contracts. Thus, the trial court properly determined that there was no genuine dispute concerning whether Moonwalkers had knowledge of the terms of the contracts because the undisputed evidence at summary judgment showed that the company had received and reviewed them.

The trial court also properly determined that Moonwalkers signified its intent to ratify the merchant services agreements through its conduct. First, as discussed

above, the undisputed evidence presented to the trial court indicates that Moonwalkers received and viewed a fully executed copy of the merchant services agreements but did not, at that time, inform BAMS that the company had not signed the contracts and did not intend to be bound by them. Instead, Moonwalkers received credit card processing services from BAMS for several months after receiving the signed contracts without informing BAMS that it had not agreed to be bound.

Moreover, in October 2015, several months after Moonwalkers received copies of the executed contracts, BAMS sent an email to Moonwalkers at its company email address (the same email address to which DocuSign sent the contracts) attaching a letter requesting documents. The request stated that "Your merchant card processing contract requires that you fulfill informational requests that may be made by us from time to time. Therefore, please provide the following . . . ." Moonwalkers responded to that email and letter by providing the requested documents. The company did not assert that it was not bound by this term of the written contract.

The following week, BAMS sent another email and letter to Moonwalkers, detailing the establishment of a reserve account. The letter states, "Pursuant to the terms and conditions of the Merchant Agreement, the merchant is responsible for all chargebacks." The letter then describes a reserve amount that BAMS was imposing on Moonwalkers to protect against potential losses from chargebacks. The letter concludes by stating, "Please note that nothing contained herein shall be deemed a

waiver of any rights we may have under the Merchant Agreement or otherwise and we expressly reserve such rights."

Again, Moonwalkers does not dispute that it received this letter. Indeed, BAMS presented email correspondence from Moonwalkers in which the company sought to negotiate more lenient terms for the reserve account after receiving the letter. Throughout this correspondence, Moonwalkers never asserted that it was not bound by the terms of the contract described in the letter.

In light of this evidence, we hold that the trial court properly entered partial summary judgment on the issue of ratification as a matter of law. Even accepting as true Moonwalker's claim that an employee of BAMS signed the contracts on Moonwalker's behalf without authorization, the undisputed evidence submitted by BAMS shows that Moonwalkers both received and reviewed the proposed contracts and received and reviewed the purportedly final contracts signed by the parties.

Moonwalkers then received services from BAMS covered by those contracts for several months. During that time, BAMS repeatedly asked Moonwalkers to comply with specific terms and conditions of the "merchant card processing contract" and "Merchant Agreement" and Moonwalkers did so, without ever suggesting that the parties were not bound by any written contracts containing specific terms and conditions. We agree with the trial court that these undisputed facts demonstrate that Moonwalkers "had full knowledge of all material facts relative to the

unauthorized transaction and . . . had signified [its] assent or [its] intent to ratify by word or by conduct which was inconsistent with an intent not to ratify." *Carolina Equip. & Parts Co.*, 265 N.C. at 400–01, 144 S.E.2d at 258.

We therefore affirm the trial court's entry of partial summary judgment based on the doctrine of ratification. Having affirmed the trial court's ruling on this ground, we need not address the remaining contract arguments asserted by the parties.

## Conclusion

We affirm the trial court's partial summary judgment order.

AFFIRMED.

Judge BRYANT concurs.

Judge DILLON concurs with separate opinion.

DILLON, Judge, concurring.

I agree with the result reached by the majority. However, I write separately because I disagree with the majority's analysis as to *why* we have appellate jurisdiction.

This appeal is interlocutory because it is from an order granting *partial* summary judgment. The majority concludes that we have appellate jurisdiction based on the trial court's Rule 54(b) certification. *See* N.C. R. Civ. P. 54(b). I disagree with this conclusion, because the trial court did not meet the requirement under Rule 54(b) that it find in its order that there is "no just cause for delay." Notwithstanding the trial court's failure to properly certify its order as a final judgment under Rule 54(b), I conclude that we have appellate jurisdiction, nonetheless, because the trial court's order affects a substantial right which would otherwise be lost. My reasoning is as follows:

It is the General Assembly which is constitutionally empowered to determine our appellate jurisdiction. N.C. Const. Art. IV, sec. 12(2) ("The Court of Appeals shall have such appellate jurisdiction as the General Assembly may prescribe."). In Chapter 7A of our General Statutes, our General Assembly has provided for situations where a party has the right to appeal an interlocutory order; for instance, when the order affects a substantial right. N.C. Gen. Stat. § 7A-27(b).

The General Assembly has also empowered the trial court with the discretion to certify judgments entered as to fewer than all the claims or parties as "final

judgments" subject to immediate review, but "only if" it determines "in the judgment" that "there is no just reason for delay." N.C. R. Civ. P. 54(b). That is, the plain language of Rule 54(b) states that a judgment as to some, but not all, of the claims is *not* generally a final judgment and "is subject to revision at any time before the entry of judgment adjudicating" all of the remaining claims. *Id.* But, the trial court has the discretion to render such judgment a final judgment by stating in the order that there is no just reason for delay: "[T]he court may enter a final judgment as to [fewer] than all the claims [] only if there is no just reason for delay and it is so determined in the judgment." *Id.*

The partial summary judgment order at issue here is the type which the trial court has the discretion to certify as a final judgment since the order constitutes a judgment as to some, but not all, of the claims. However, the trial court has not properly exercised its discretion to certify the order as a final judgment. The trial court could have done so only if it had "determined in the judgment" that "there is no just reason for delay." *Id.* The trial court, however, made no such determination. Rather, it merely declared its interlocutory order as a final judgment based on its determination that its order affects a substantial right – the possibility of inconsistent verdicts[3] – stating as follows:

---

[3] Our Supreme Court has recognized that a substantial right may be affected where an order subjects a party to the possibility of separate trials on its claims may result in "inconsistent verdicts." *See, e.g., Green v. Duke Power*, 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982).

> The Court further finds and concludes, upon consideration of Plaintiffs' request for Certification for Immediate Appeal, that immediate appeal is appropriate pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, because this Order disposes of the majority of Plaintiffs' claims, and if the remaining claims proceeded to trial, there is a possibility of verdicts inconsistent with the Court's ruling in this case.

Whether the order affects a substantial right is a question of law which is to be determined by our Court *de novo*. The trial court does not have the discretion to determine that its interlocutory order affects a substantial right, thereby conferring appellate jurisdiction on that basis. It only has the discretion to certify an interlocutory order constituting a judgment regarding some claims or parties – which would otherwise be subject to revision as an interlocutory order – as a final judgment and, therefore, make it subject to immediate review under Rule 54(b).

Our Supreme Court has recently held that the plain language of Rule 54(b) requires that the trial court expressly state in the order that it has determined that there is "no just reason for delay" for it to be properly certified as a final judgment. Specifically, our Court held that a certification by a trial court "requires" that the determination by the trial court that "there [is] no just reason [for] delay" must "be stated *in the judgment itself*" to constitute proper certification under Rule 54(b). *Branch Banking and Trust Co. v. Peacock Farm, Inc.*, 241 N.C. App. 213, 218, 772 S.E.2d 495, 499 (2015) (emphasis in original). Our Supreme Court affirmed this holding *per curiam* "[f]or the reasons stated in the majority opinion[.]" *Branch*

*Banking and Trust Co. v. Peacock Farm, Inc.*, 368 N.C. 478, 478, 780 S.E.2d 553, 553 (2015).

In another case, our Supreme Court reviewed an order for partial summary judgment in which the trial court expressed an intention that the parties be permitted to appeal immediately but failed to make the determination that there was "no just reason for delay." *Oestreicher v. American Nat'l Stores, Inc.*, 290 N.C. 118, 126-27, 225 S.E.2d 797, 803-04 (1976). Our Supreme Court suggested that the trial court probably intended to certify its order as a final judgment and that its omission of the required language was probably due to "inadvertence." *Id.* at 129, 225 S.E.2d at 804-05. However, our Supreme Court determined that it had jurisdiction over the appeal, *not* because the trial court had certified the judgment as a final judgment pursuant to Rule 54(b), but rather pursuant to N.C. Gen. Stat. 7A-27, based on *its own determination* that the partial summary judgment order affected a substantial right. *Id.* at 130, 225 S.E.2d at 805 ("We believe that a 'substantial right' is involved here. . . . The Court of Appeals was in error in dismissing this appeal.").[4]

---

[4] I recognize that our Court, on occasion, has held that trial court's determination that its order would affect a substantial right "was tantamount to certification that there was no just reason for delay," and therefore properly certified the order under Rule 54(b). *Smock v. Brantley*, 76 N.C. App. 73, 74, 331 S.E.2d 714, 716 (1985); *see also Johnson v. Johnson*, 208 N.C. App. 118, 121, 701 S.E.2d 722, 725 (2010) (following the reasoning in *Smock*); *Garris v. Garris*, 92 N.C. App. 467, 470, 374 S.E.2d 638, 640 (1988). However, I conclude that these holdings are at odds with the plain language of Rule 54(b) and of the jurisprudence from our Supreme Court. A trial court has not been empowered with the discretion to determine for the appellate courts what constitutes a substantial right; it has only been granted the discretion to determine whether there is "no just reason for delay."

I, nonetheless, conclude that the trial court's partial summary judgment order before us does affect a substantial right. For instance, the order expressly denies Plaintiffs the right to a jury trial on their remaining claims. And an interlocutory order denying a party the right to a jury trial affects a substantial right. *See, e.g., In re Ferguson*, 50 N.C. App. 681, 682, 274 S.E.2d 879, 879 (1981). Accordingly, I believe we have appellate jurisdiction over this appeal, and I agree with the majority's holding on the merits.