DIETZ, Judge.
This case is one of a growing number of contract cases requiring the courts to fit decades-old (sometimes centuries-old) contract principles to the realities of the digital age.
Banc of America Merchant Services, LLC (BAMS) provided credit card processing services to IO Moonwalkers, Inc., a company that sells hoverboard scooters. BAMS uses a standard contract with its customers and sent that contract to Moonwalkers using an electronic document application called DocuSign. DocuSign transmits the contract in an email and the software records when the contract accompanying that email is viewed and when it is electronically signed.
After a dispute concerning chargebacks for fraudulent purchases, Moonwalkers asserted that it never electronically signed the contract with BAMS and should not be bound by its terms. The company asserted that a salesperson for BAMS likely signed the contract on behalf of Moonwalkers without permission.
At summary judgment, BAMS produced records showing the exact date and time that someone using the Moonwalkers company email viewed the proposed contract, electronically signed it, and later viewed the final, fully executed version. Moonwalkers does not dispute the accuracy of these DocuSign records, and does not claim that it never viewed the proposed contract, but insists that the contract was not signed by anyone at the company authorized to do so.
BAMS also produced emails and letters sent in the following months in which BAMS referenced the contract and asked Moonwalkers to take action required by the contract, such as providing documentation. Moonwalkers complied with those requests without ever suggesting the parties had no written contract.
As explained below, in light of this evidence, the trial court properly held that, even if Moonwalkers did not sign the contract, the company ratified the contract through its actions. We therefore affirm the trial court's grant of partial summary judgment based on the doctrine of ratification.
Facts and Procedural History
Plaintiffs IO Moonwalkers, Inc. and American Coins & Gold, Inc. are distinct corporations *585 with shared ownership but unrelated businesses. Moonwalkers sells hoverboards and American Coins & Gold sells metals, gemstones, and jewelry. Third-Party Defendant Rilwan Hassan owns both companies.
Defendant Banc of America Merchant Services, LLC processes credit card transactions for retail businesses.[1] The company uses an electronic signature service called DocuSign to enter into written contracts with its customers that BAMS calls "merchant services agreements." DocuSign gives each merchant services agreement an identifying number, which then appears on each page of the document. DocuSign sends an email with an electronic link to a copy of the agreement. Through DocuSign, the party viewing the contract can sign it using a digital signature. DocuSign tracks the date and time when the contract is sent, viewed, and signed by each party.
Once a contract between BAMS and a customer is executed, DocuSign sends a "certificate of completion" to BAMS that includes the identifying number for that contract, the email address of the contract recipient, the IP address of the computer that viewed the email and contract, and details of relevant "events" that occurred such as the time and date when the contract was viewed and signed. BAMS maintains these certificates of completion as business records in the ordinary course of its business.
Rilwan Hassan, the owner of Moonwalkers, is familiar with the DocuSign process because he used the service in 2014 to contract with BAMS for credit card processing services for American Coins & Gold, another business he owns. Hassan concedes that he used DocuSign to review and sign the BAMS contract with American Coins & Gold.
In 2015, Hassan met with BAMS employee Robert Kanterman to contract for similar card-processing services for Moonwalkers. Moonwalkers concedes that BAMS sent proposed merchant services agreements to Moonwalkers at the company email address Hassan provided. Those contracts contain various terms concerning BAMS services as well as a provision permitting the execution of the contract by electronic signatures.
Hassan stated in an affidavit that he "may have glanced at some of those emails" but he could not recall if he looked at all of them. DocuSign's electronic records indicate that someone with access to the Moonwalkers email account viewed the emails and corresponding contracts sent by DocuSign, and then electronically signed the contracts several minutes later. DocuSign later sent copies of the fully executed contracts to the Moonwalkers email account and, again, someone with access to that email account viewed the completed contracts. In an affidavit, Hassan asserts that he believes Robert Kanterman, the BAMS employee with whom he negotiated the contract, electronically signed Hassan's name on the contracts on behalf of Moonwalkers without Hassan's permission. The affidavit provides no explanation of how Kanterman could have accessed the Moonwalkers email account or altered the DocuSign records to make it appear as if someone with access to that account viewed and signed the contracts.
Once BAMS received the certificate of completion for the merchant services agreements with Moonwalkers, it began providing credit card processing services to the company. Several months later, after a series of transactions involving stolen credit card numbers, BAMS issued "chargebacks" to Moonwalkers, which occur when a credit card holder reports that a particular credit card purchase resulted from fraud. Under the terms of BAMS's merchant services agreements, BAMS requires the retail merchant to repay BAMS the funds from the fraudulent purchase. The chargebacks in this case were extensive and posed a significant financial challenge to Moonwalkers.
Ultimately, Moonwalkers sued BAMS and its affiliated companies and BAMS countersued. After discovery, BAMS moved for partial summary judgment on the ground that Moonwalkers was bound by the merchant services agreements and that the terms of *586 those contracts disposed of many of the claims and defenses in this case. The trial court entered partial summary judgment against Moonwalkers and certified its partial summary judgment for immediate appellate review under Rule 54(b).[2] Moonwalkers timely appealed.
Analysis
This Court reviews the grant of a partial motion for summary judgment de novo . In re Will of Jones , 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). Partial summary judgment is appropriate on an issue when there is no genuine dispute as to any material fact and the court may therefore rule on the issue as a matter of law. Id.
In the trial court, BAMS relied on a number of legal theories to support its motion for partial summary judgment. As explained below, the trial court properly entered judgment based on the doctrine of ratification and we therefore address that legal theory first.
In contract law, ratification is a legal doctrine that binds a principal to certain unauthorized acts of an agent, such as executing a contract. Carolina Equip. & PartsCo. v. Anders , 265 N.C. 393, 400, 144 S.E.2d 252, 257 (1965). "In order to establish the act of a principal as a ratification of the unauthorized transactions of an agent, the party claiming ratification must prove (1) that at the time of the act relied upon, the principal had full knowledge of all material facts relative to the unauthorized transaction, and (2) that the principal had signified his assent or his intent to ratify by word or by conduct which was inconsistent with an intent not to ratify." Id. at 400-01, 144 S.E.2d at 258 (citation omitted).
"Intent to ratify can be evidenced by a course of conduct on the part of the principal which reasonably tends to show an intention on his part to ratify the agent's unauthorized acts." Carter v. TD Ameritrade Holding Corp ., 218 N.C. App. 222, 229, 721 S.E.2d 256, 262 (2012). "[T]o constitute ratification as a matter of law, the conduct must be consistent with an intent to affirm the unauthorized act and inconsistent with any other purpose." Id.
Moonwalkers argues that the trial court could not enter summary judgment on the issue of ratification because there were genuine issues of material facts. Specifically, Moonwalkers argues that it did not sign the contracts and that it believes an employee of BAMS signed the contracts without authorization. Moonwalkers also argues that it did not have knowledge of the terms of the contracts and did not take any action indicating intent to ratify the unauthorized assent.
Were this a more traditional contract negotiation, in which the parties had mailed proposed contracts back and forth, a sworn affidavit stating that Moonwalkers never reviewed or signed the contracts might be sufficient to create a genuine issue of material fact with respect to the knowledge element of ratification. But this case is different because BAMS presented evidence from the DocuSign records indicating that it sent the merchant services agreements to Moonwalkers at the company email address. BAMS also submitted evidence from the DocuSign records that someone with access to that email viewed both the emails and the accompanying contracts, electronically signed them, and later viewed the completed contracts, which *587 were sent to Moonwalkers in a separate email.
Simply put, the electronic trail created by DocuSign provides information that would not have been available before the digital age-the ability to remotely monitor when other parties to a contract actually view it.
Moonwalkers disputes many facts alleged by BAMS but, notably, the company does not dispute the accuracy of the DocuSign records. In his first affidavit, Hassan states that Moonwalkers received many emails from Bank of America and its affiliated companies and that "some of the communications Bank of America has sent me appear to be of a general or not urgent nature, and I have not always reviewed those communications closely." He also states that "Robert Kanterman sent me various emails containing proposed merchant service agreements related to IO Moonwalkers. I may have glanced at some of those emails, but I do not recall whether I even looked at all of them or not."
In his second affidavit, Hassan further states that "the so-called 'signed' contracts that were sent to me came from an email account for 'Contract Management Services' rather than any email for any of the Defendants in this case." He explains that "I received an excessive amount of emails from Bank of America, many of which were not related to this issue. At no point, was I under the impression that any of those emails would create a contract between me and any of the Defendants in this case for merchant services."
Missing from Hassan's two lengthy affidavits is any assertion that the DocuSign records are incorrect or that no one from the company actually viewed the emails and accompanying contracts, as the DocuSign records indicate. To be sure, Hassan's affidavit states that Moonwalkers never signed those contracts and that the company never intended to be bound by them. But Hassan does not assert that the company never received or reviewed the contracts. Thus, the trial court properly determined that there was no genuine dispute concerning whether Moonwalkers had knowledge of the terms of the contracts because the undisputed evidence at summary judgment showed that the company had received and reviewed them.
The trial court also properly determined that Moonwalkers signified its intent to ratify the merchant services agreements through its conduct. First, as discussed above, the undisputed evidence presented to the trial court indicates that Moonwalkers received and viewed a fully executed copy of the merchant services agreements but did not, at that time, inform BAMS that the company had not signed the contracts and did not intend to be bound by them. Instead, Moonwalkers received credit card processing services from BAMS for several months after receiving the signed contracts without informing BAMS that it had not agreed to be bound.
Moreover, in October 2015, several months after Moonwalkers received copies of the executed contracts, BAMS sent an email to Moonwalkers at its company email address (the same email address to which DocuSign sent the contracts) attaching a letter requesting documents. The request stated that "Your merchant card processing contract requires that you fulfill informational requests that may be made by us from time to time. Therefore, please provide the following...." Moonwalkers responded to that email and letter by providing the requested documents. The company did not assert that it was not bound by this term of the written contract.
The following week, BAMS sent another email and letter to Moonwalkers, detailing the establishment of a reserve account. The letter states, "Pursuant to the terms and conditions of the Merchant Agreement, the merchant is responsible for all chargebacks." The letter then describes a reserve amount that BAMS was imposing on Moonwalkers to protect against potential losses from chargebacks. The letter concludes by stating, "Please note that nothing contained herein shall be deemed a waiver of any rights we may have under the Merchant Agreement or otherwise and we expressly reserve such rights."
Again, Moonwalkers does not dispute that it received this letter. Indeed, BAMS presented email correspondence from Moonwalkers in which the company sought to negotiate *588 more lenient terms for the reserve account after receiving the letter. Throughout this correspondence, Moonwalkers never asserted that it was not bound by the terms of the contract described in the letter.
In light of this evidence, we hold that the trial court properly entered partial summary judgment on the issue of ratification as a matter of law. Even accepting as true Moonwalker's claim that an employee of BAMS signed the contracts on Moonwalker's behalf without authorization, the undisputed evidence submitted by BAMS shows that Moonwalkers both received and reviewed the proposed contracts and received and reviewed the purportedly final contracts signed by the parties.
Moonwalkers then received services from BAMS covered by those contracts for several months. During that time, BAMS repeatedly asked Moonwalkers to comply with specific terms and conditions of the "merchant card processing contract" and "Merchant Agreement" and Moonwalkers did so, without ever suggesting that the parties were not bound by any written contracts containing specific terms and conditions. We agree with the trial court that these undisputed facts demonstrate that Moonwalkers "had full knowledge of all material facts relative to the unauthorized transaction and ... had signified [its] assent or [its] intent to ratify by word or by conduct which was inconsistent with an intent not to ratify." Carolina Equip. & Parts Co. , 265 N.C. at 400-01, 144 S.E.2d at 258.
We therefore affirm the trial court's entry of partial summary judgment based on the doctrine of ratification. Having affirmed the trial court's ruling on this ground, we need not address the remaining contract arguments asserted by the parties.
Conclusion
We affirm the trial court's partial summary judgment order.
AFFIRMED.
Judge BRYANT concurs.
Judge DILLON concurs with separate opinion.

For ease of reading, we refer to Banc of America Merchant Services, LLC and its affiliated co-defendants collectively as "BAMS."

The concurring opinion notes that the trial court's Rule 54(b) certification failed to expressly state that there was "no just reason for delay." In Oestreicher v. American Nat'l Stores, Inc. , 290 N.C. 118, 225 S.E.2d 797 (1976), our Supreme Court held that a certification that expressly references Rule 54(b) is sufficient to confer jurisdiction if the "no just reason for delay" language is omitted due to inadvertence. The Court explained that "it seems to us that justice requires that the appeal be allowed despite the fact that the trial judge failed to enter the words 'there is no just reason for delay' in his judgment. This omission could have very well been an inadvertence on the part of the trial judge. He certainly intended that plaintiff be permitted to appeal, or otherwise he would not have entered the appeal entries on account of the language of Rule 54(b) and would have required plaintiff to seek certiorari." Id. at 129, 225 S.E.2d at 804-05. Here, too, the trial court's order expressly referenced Rule 54(b). And the transcript of the proceedings, as well as the language of the court's order, indicate that the trial court intended to make the necessary finding concerning "no just reason for delay" but inadvertently failed to do so. Accordingly, we have appellate jurisdiction to review the challenged order.