Charlotte Student Hous. DST v. Choate Constr. Co., 2018 NCBC 88.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 5148

CHARLOTTE STUDENT HOUSING
DST; and CHARLOTTE STUDENT
HOUSING LEASECO, LLC,

Plaintiffs,

v.

CHOATE CONSTRUCTION
COMPANY; DINO M. PAPPAS;
GEOSCIENCE GROUP; MILLER
ARCHITECTURE; THE
SANCTUARY AT CHARLOTTE,
LLC; TONY F. MILLER; and
VRETTOS PAPPAS CONSULTING
ENGINEERS, P.A.,

Defendants.

**ORDER AND OPINION ON
MOTIONS TO DISMISS OR STAY
PENDING ARBITRATION**

1. This case arises from the construction of a student apartment complex, known as Arcadia. Plaintiffs are Arcadia's current owner and landlord. They have sued the original owner, the architect, the general contractor, and two subcontractors, alleging that numerous, serious defects in Arcadia's design and construction have caused millions of dollars in repairs and lost rent.

2. Two Defendants—Choate Construction Company ("Choate") and Geoscience Group ("Geoscience")—believe the claims asserted against them must be resolved in arbitration. They ask the Court to dismiss or stay the claims pending the outcome of arbitration. For the following reasons, the Court **GRANTS** both motions to the extent they seek a stay.

*Katten Muchin Rosenman LLP, by Richard L. Farley, Jeffrey C. Grady, and Kelsey Panizzolo, for Plaintiffs Charlotte Student Housing DST and Charlotte Student Housing LeaseCo, LLC.*

*Kilpatrick Townsend & Stockton LLP, by Brian G. Corgan, Elizabeth L. Winters, Hayley R. Ambler, and David K. Johnson, for Defendant Choate Construction Company.*

*Berman Fink Van Horn P.C., by Thomas E. Austin, Charles H. Van Horn, and Lauren S. Frisch, for Defendant The Sanctuary at Charlotte, LLC.*

*Smith Moore Leatherwood LLP, by Jeffrey P. MacHarg and Alexandria Hirsh, for Defendants Dino Pappas and Vrettos Pappas Consulting Engineers, P.A.*

*Hamilton Stephens Steele + Martin, PLLC, by Tracy T. James and Carmela Mastrianni, for Defendant Geoscience Group.*

*Cranfill Sumner & Hartzog LLP, by John W. Ong and Meredith A. Fitzgibbon, for Defendants Tony F. Miller and Miller Architecture.*

Conrad, Judge.

I.
BACKGROUND[1]

3. To anyone who attended college in the twentieth century, Arcadia must sound like Shangri-La, a paradise for the modern-day student. It is a 22-acre property, with over 200 apartments in nearly 40 buildings (variously described as chalets, manors, and cottages). (Compl. ¶¶ 14–15, ECF No. 3; Choate Mot. to Dismiss Ex. A, ECF No. 49.1 ["Construction Contract"].) A separate clubhouse offers a game

---

[1] As context for the Court's analysis, this section describes the allegations in the complaint and also the relevant facts regarding the pending motions, which are largely undisputed (though the parties draw different conclusions from them). The Court elects to make necessary findings of fact and conclusions of law at the end of this Opinion.

room, study room, tanning booths, sauna, steam room, and more, with an outdoor pool in an adjacent area. (*See* Compl. ¶ 48.)

4. Arcadia took nearly two years to build. Its original owner, The Sanctuary at Charlotte, LLC ("Sanctuary"), engaged Choate to serve as general contractor, using a standard form contract ("Construction Contract"). (*See* Compl. ¶¶ 16–17.) Choate warranted that it would furnish new materials of good quality and that its work would conform to the contract and be free from defects. The warranties became effective upon substantial completion of the complex and ran for one year. (*See* Construction Contract, General Conditions §§ 3.5, 9.8.4, 12.2.2.1.) As alleged by Plaintiffs, Choate later issued a written, one-page Contractor Warranty "[u]pon completion of the Project" to be effective from March 10, 2015 to March 10, 2016. (Compl. ¶ 22; *see also* Choate's Mot. to Dismiss Ex. B, ECF No. 49.2.)

5. After construction was complete, Arcadia changed hands. Sanctuary sold the property to a third party, which in turn sold it to Plaintiff Charlotte Student Housing DST. (Compl. ¶¶ 24, 36.) Plaintiff Charlotte Student Housing LeaseCo, LLC became the landlord on all tenant leases. (Compl. ¶ 37.)

6. Plaintiffs now claim that, upon purchasing the property, they learned Arcadia wasn't paradise after all. Among other things, Plaintiffs allege they were forced to close the clubhouse and one of the apartment buildings after discovering major structural defects, including weak soil and water infiltration. (*See* Compl. ¶¶ 54, 81.) They also allege widespread mold and mildew problems due to defects in the HVAC systems throughout Arcadia. (*See* Compl. ¶ 93.) When Plaintiffs notified

Choate of these and other alleged defects, Choate agreed to address some but not all of them under the terms of the Contractor Warranty. (*See* Compl. ¶¶ 22–23, 39–45.)

7. The unresolved disputes prompted this lawsuit. Asserting a claim for breach of warranty, Plaintiffs attribute all of the defects to Choate's faulty workmanship and failure to comply with the project's plans and specifications. (*See* Compl. ¶ 131.) Plaintiffs also claim negligence on the part of several subcontractors and service providers, including Geoscience for its role in testing soil conditions and providing other engineering services. (*See* Compl. ¶¶ 153–54.) Finally, Plaintiffs allege that Choate and Sanctuary were aware of the mold and mildew problems before selling Arcadia but conspired to commit fraud by concealing them. (*See* Compl. ¶¶ 161–69.)

8. Choate and Geoscience ask the Court to dismiss or stay all claims asserted against them on the ground that they are subject to binding arbitration. Choate relies on the arbitration clause found in the Construction Contract between it and Sanctuary. That clause requires claims "arising out of or related to" the Construction Contract to be mediated and then subject to arbitration before the American Arbitration Association ("AAA") in accordance with its Construction Industry Arbitration Rules ("Construction Rules"). (Construction Contract, General Conditions §§ 15.1.1, 15.4.1.)

9. Geoscience points to its own contracts with Sanctuary, one dealing with geotechnical subsurface exploration and the other with construction materials testing services ("Geoscience Contracts"). Each contract includes a clause requiring, at

Geoscience's sole discretion, arbitration of "all claims or disputes" by the AAA under its Construction Rules. (Geoscience's Mot. to Dismiss Exs. A, B, ECF Nos. 40.1, 40.2.)

10. Plaintiffs argue that none of these contracts were assigned to them as part of the purchase of Arcadia and that they are not attempting to enforce the contracts' terms. Thus, Plaintiffs contend, any arbitration agreements made between Choate and Sanctuary or Geoscience and Sanctuary are not binding on Plaintiffs.

11. The motions have been fully briefed, and the Court held a hearing on July 25, 2018. After the hearing, Choate and Geoscience supplemented the record without objection, and Plaintiffs filed a short response. (*See* ECF Nos. 80, 91, 93.) The motions are ripe for determination.

II.
LEGAL STANDARD

12. The parties agree that the Federal Arbitration Act ("FAA") governs the resolution of these motions. (*See* Choate's Mem. in Supp. Mot. to Dismiss 9, ECF No. 49 ["Choate's Mem."]; Geoscience's Br. in Supp. Mot. to Dismiss 2, ECF No. 44 ["Geo.'s Br."]; Pls.' Opp'n to Choate's Mot. to Dismiss 10, ECF No. 62 ["Pls.' Opp'n (Choate)"]; Pls.' Opp'n to Geoscience's Mot. to Dismiss 6, ECF No. 64 [Pls.' Opp'n (Geo.)"].) This is so because the relevant arbitration clauses are contained in written contracts evidencing a transaction involving interstate commerce, specifically agreements between multiple out-of-state entities to construct a student housing complex within North Carolina. *See* 9 U.S.C. § 2; *see also Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–81 (1995) (construing "commerce" broadly to reach transactions involving interstate commerce); *Gaylor, Inc. v. Vizor, LLC*, 2015 NCBC LEXIS 102,

at \*10–11 (N.C. Super. Ct. Oct. 30, 2015) (applying FAA to contract concerning apartment project in North Carolina).

13. "[W]hen the FAA governs a dispute, state law fills procedural gaps in the FAA as it is applied in state courts." *Gaylor*, 2015 NCBC LEXIS 102, at \*12 (quoting *Cold Springs Ventures, LLC v. Gilead Sciences, Inc.*, 2014 NCBC LEXIS 10, at \*8 (N.C. Super. Ct. Mar. 26, 2014)). By statute, when faced with a dispute concerning a purported agreement to arbitrate, this Court must "proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate." N.C. Gen. Stat. § 1-569.7(a)(2). "[I]n determining the threshold issue of whether a mandatory arbitration agreement exists, the court necessarily must sit as a finder of fact." *Capps v. Blondeau*, 2010 NCBC LEXIS 10, at \*5 n.6 (N.C. Super. Ct. Apr. 13, 2010); *see also Griessel v. Temas Eye Ctr., P.C.*, 199 N.C. App. 314, 317, 681 S.E.2d 446, 448 (2009) ("[A]n order denying a motion to compel arbitration must include findings of fact as to 'whether the parties had a valid agreement to arbitrate' and, if so, 'whether the specific dispute falls within the substantive scope of that agreement.'" (citations omitted)).

III.
ANALYSIS

14. This case presents a frequently recurring question: whether an arbitration agreement may be enforced against a nonsignatory. Because arbitration is a matter of contract, the usual rule is that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). In an appropriate case, though,

"a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GmbH*, 206 F.3d 411, 415 (4th Cir. 2000).

15. Here, the parties dispute whether Plaintiffs are bound by the arbitration clauses in the contracts between Choate and Sanctuary and between Geoscience and Sanctuary. Before reaching that question, though, the Court must first address who should decide it—the Court or the arbitration panel.

## A. Deciding Arbitrability

16. Although gateway questions of arbitrability are usually reserved for judicial determination, parties can, and often do, delegate arbitrability to the arbitrator. *See, e.g.*, *Hall v. Dancy*, 2018 NCBC LEXIS 63, at \*6 (N.C. Super. Ct. June 27, 2018). That said, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (brackets and quotation marks omitted). When there is, courts must enforce the delegation, just as they would any other term of the parties' arbitration agreement. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010).

17. Choate and Geoscience present this as a straightforward case of delegation. They contend that each arbitration clause incorporates the AAA's Construction Rules, which expressly delegate to the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." AAA, Construction Industry Arbitration Rules and

Mediation Procedures, Rule 9(a) (Oct. 1, 2009). This language, Choate and Geoscience contend, requires the arbitrator, not the Court, to decide whether Plaintiffs are bound by the arbitration clauses and whether the asserted claims fall within the scope of each. (*See* Choate's Mem. 18–19; Geo.'s Br. 5.)

18. Plaintiffs respond that they never agreed to arbitrate any issue with Choate and Geoscience, much less to arbitrate arbitrability. It is irrelevant, Plaintiffs contend, that the arbitration clauses incorporate the AAA rules because Choate and Geoscience made those agreements with a third party, Sanctuary. (*See* Pls.' Opp'n (Choate) 20; Pls.' Opp'n (Geo.) 8.) Plaintiffs contend that the Court should not send any issues to arbitration before deciding, as a threshold matter, whether Plaintiffs are in fact bound by the arbitration clauses.

19. Plaintiffs are correct. Choate and Geoscience have pointed to evidence of their *own* intent to arbitrate the issue of arbitrability, but they have not offered any evidence that *Plaintiffs* shared that intent. Plaintiffs did not sign either arbitration agreement, nor are they referenced in either. "Courts have generally found that agreements that do not mention or reference a particular non-signatory do not clearly or unmistakably evidence an agreement by that non-signatory to have an arbitrator determine whether the agreement is arbitrable." *McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins. Co.*, 2015 U.S. Dist. LEXIS 3347, at \*14–15 (S.D.N.Y. Jan. 12, 2015); *see also, e.g.*, *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013); *Nat'l Union Fire Ins. Co. v. Stucco Sys., LLC*, 289 F. Supp. 3d 457, 466 (S.D.N.Y. 2018); *DCK World Wide, LLC v. Pacifica Riverplace, LP*, 2018 U.S. Dist.

LEXIS 25616, at *6 (W.D. Tex. Feb. 16, 2018); *Oehme, van Sweden & Assocs., Inc. v. Maypaul Trading & Servs., Ltd.*, 902 F. Supp. 2d 87, 97 (D.D.C. 2012).

20.     Choate and Geoscience do not cite any contrary case law.  Although they point to the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), that policy does not apply to agreements to arbitrate arbitrability, *see Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002).  In interpreting the FAA, the United States Supreme Court presumes that parties do not intend to delegate arbitrability to the arbitrator because presuming otherwise "might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *First Options*, 514 U.S. at 945.  That reasoning applies with particular force to gateway disputes about whether a party is even bound by the arbitration clause in the first place. *See Howsam*, 537 U.S. at 84.

21.     The Court finds no clear-and-unmistakable evidence that Plaintiffs, as nonsignatories, agreed to delegate arbitrability to the arbitrator.  Accordingly, the Court must decide the parties' gateway disputes of arbitrability—whether Plaintiffs are bound by the arbitration clauses and which claims, if any, are subject to arbitration. *See, e.g.*, *Nat'l Union Fire Ins.*, 289 F. Supp. 3d at 466; *DCK World Wide*, 2018 U.S. Dist. LEXIS 25616, at *6; *Oehme*, 902 F. Supp. 2d at 97; *Masefield AG v. Colonial Oil Indus.*, 2005 U.S. Dist. LEXIS 6737, at *6–7 (S.D.N.Y. Apr. 18, 2005).

## B. <u>Estoppel</u>

22.    The FAA does not "alter background principles of state contract law regarding the scope of [arbitration] agreements (including the question of who is bound by them)." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009).  Thus, courts have long recognized a number of traditional doctrines that allow arbitration agreements to be enforced by or against nonsignatories.  These doctrines include incorporation by reference, assumption, agency, veil piercing, and estoppel.  *See, e.g.*, *Int'l Paper*, 206 F.3d at 417; *see also LSB Fin. Servs., Inc. v. Harrison*, 144 N.C. App. 542, 548–49, 548 S.E.2d 574, 579 (2001).

23.    Of these doctrines, estoppel is dispositive here.  In short, "[a] nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause." *Int'l Paper*, 206 F.3d at 418 (quotation marks omitted).  It would be manifestly unfair to permit a party to take the benefit of the contract "despite [its] non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006); *see also Int'l Paper*, 206 F.3d at 418.  That is what Plaintiffs seek to do here, and they are therefore estopped from refusing to arbitrate their claims against Choate and Geoscience.

## 1. Claims Asserted Against Choate

24.    Plaintiffs contend they have received no benefit from the Construction Contract because that contract was not assigned to them as part of the purchase of Arcadia and because their claims against Choate do not arise from it.  (*See* Pls.' Opp'n

(Choate) 11.)  Plaintiffs insist that their claim for breach of warranty is instead based on the Contractor Warranty, a standalone document that does not incorporate the Construction Contract or its arbitration clause.  (*See* Pls.' Opp'n (Choate) 5, 11–12.) The conspiracy claim, Plaintiffs contend, sounds in tort and does not arise out of the Contractor Warranty or the Construction Contract.  (*See* Pls.' Opp'n (Choate) 22–23.)

25.    This argument cannot be squared with the language of the Contractor Warranty or Plaintiffs' own allegations.  On its face, the Contractor Warranty states that Choate performed all work "in accord with the Contract Documents"—an express reference to the Construction Contract.  (Choate's Mot. to Dismiss Ex. B.) Furthermore, Plaintiffs' claim that Choate breached this warranty rests on the allegation that it did not perform its work in accordance with "the plans and specifications" contained within the Construction Contract.  (Compl. ¶ 131; *see also* Pls.' Opp'n (Choate) 14 (conceding "the term 'Contract Documents' is an obvious reference [to] the plans and specifications governing the Arcadia Construction Project").)  Whether Plaintiffs were assigned the Construction Contract as part of the purchase of Arcadia is therefore beside the point.  They were on notice of the contract because of the Contractor Warranty's express reference to it.  And by seeking to hold Choate to the promise it made to Sanctuary, Plaintiffs' claim for breach of warranty is functionally the equivalent of enforcing the terms of the Construction Contract itself.

26.    Put simply, the Contractor Warranty has no meaning apart from the Construction Contract, and Plaintiffs cannot prove their claim that Choate breached

the warranty without looking to the contract. Because their claim "can only be determined by reference to an agreement containing an arbitration clause," Plaintiffs are estopped from repudiating the arbitration clause. *Noble Drilling Servs. Inc. v. Certex USA, Inc.*, 620 F.3d 469, 474 (2010); *see also Int'l Paper*, 206 F.3d at 418.

27. The remaining question concerns which claims are subject to arbitration. The arbitration clause broadly covers all disputes "arising out of or relating to" the Construction Contract. (Construction Contract, General Conditions §§ 15.1.1, 15.4.1.) Plaintiffs concede this language covers the claim for breach of warranty and that, if estoppel applies, that claim is subject to arbitration. (*See* Pls.' Opp'n (Choate) 21–22.)

28. The Court concludes that the claim for civil conspiracy against Choate is also subject to arbitration. Plaintiffs contend that this claim "is linked to the tort claims against Sanctuary"—fraudulently concealing mold and mildew problems related to Arcadia's HVAC systems—and therefore "had nothing to do with the actual construction of the project." (Pls.' Opp'n (Choate) 22.) But the arbitration clause is broad enough to capture "every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988).

29. The gist of Plaintiffs' conspiracy claim is that Choate failed to build Arcadia's HVAC systems in accordance with the Construction Contract's plans and specifications, knew that its defective work caused mold and mildew problems, and then conspired with Sanctuary to conceal the defects. (*See* Compl. ¶¶ 101–02, 104,

110, 131, 178–79.) Although Plaintiffs call this a tort and not a contract claim, the label is immaterial. The allegations clearly "relate to" Choate's duties under the Construction Contract and therefore must be sent to the arbitrator.

2. Claims Asserted Against Geoscience

30.    Plaintiffs are also estopped from refusing to arbitrate their claims against Geoscience for similar reasons. The professional negligence claim against Geoscience is expressly grounded in the work it performed in May and September 2013, subject to its contracts with Sanctuary. (*See* Compl. ¶ 20.) Plaintiffs allege the reports provided by Geoscience as part of its services were faulty and that Geoscience failed to comply with the testing requirements, plans, and specifications for the construction project. (*See* Compl. ¶¶ 56–58, 60, 83, 153.) Having sought to claim the benefit of the Geoscience Contracts, Plaintiffs are estopped from refusing to arbitrate under the arbitration clauses included within them.

31.    Plaintiffs insist that their claim for professional negligence seeks no benefit from the Geoscience Contracts but instead seeks to enforce a duty that "flows directly from North Carolina common law." (Pls.' Opp'n (Geo.) 9.) Again, though, estoppel does not turn on labels. Rather, it depends on the nature of the allegations, and "courts should examine the underlying complaint to determine whether estoppel should apply." *Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006). As alleged, Plaintiffs' claim turns on whether Geoscience failed to carry out its duties under the Geoscience Contracts. Plaintiffs can neither walk away from those allegations nor cloak them in the language of negligence in an effort to avoid

arbitration. *See, e.g., Carter v. TD Ameritrade Holding Corp.*, 218 N.C. App. 222, 232–33, 721 S.E.2d 256, 264 (2012); *Bergenstock v. Legalzoom.com, Inc.*, 2015 NCBC LEXIS 66, at *22–23 (N.C. Super. Ct. June 23, 2015).[2]

### C. Staying or Dismissing the Claims

32.     The final issue is whether the Court should dismiss the claims or stay them pending arbitration. Although Plaintiffs' claims against Choate and Geoscience must proceed to arbitration, this Order does not resolve the entire lawsuit. Plaintiffs' claims against several other defendants remain before the Court. Thus, the better course is to stay the claims against Choate and Geoscience pending the outcome of arbitration. *See, e.g.*, *Ryan v. BuckleySandler, LLP*, 69 F. Supp. 3d 140, 149 (D.D.C. 2014) (dismissal is appropriate only where all claims are submitted to arbitrator).

IV.
CONCLUSION

33.     The Court **FINDS** and **CONCLUDES** as follows:

a.     The Construction Contract between Choate and Sanctuary contains a valid arbitration agreement. The contract involves interstate commerce and is subject to the FAA. By asserting a claim for breach of the Contractor Warranty, Plaintiffs seek a direct benefit from the Construction Contract and are therefore

---

[2] One final issue bears mention. In support of its motion, Geoscience attached unsigned copies of the Geoscience Contracts, with no supporting affidavit. (*See* Geoscience's Mot. to Dismiss Exs. A, B.) Without opposition, Geoscience supplemented the record with an affidavit stating that Geoscience and Sanctuary had, in fact, executed the contracts and also with additional documents confirming Sanctuary's awareness and acceptance of the arbitration clause. (*See* Aff. K. Caldwell, ECF No. 80.) Although Plaintiffs initially questioned the unsigned contracts, they have voiced no concerns about the supplemental materials. The Court concludes that Geoscience has sufficiently established that the Geoscience Contracts are valid and enforceable.

estopped from refusing to arbitrate. Both claims asserted against Choate fall within the scope of the arbitration agreement and are subject to arbitration.

b. The Geoscience Contracts between Geoscience and Sanctuary contain valid arbitration agreements. The contracts involve interstate commerce and are subject to the FAA. By asserting a claim grounded in Geoscience's duties under the Geoscience Contracts, Plaintiffs seek a direct benefit from the contracts and are therefore estopped from refusing to arbitrate. The claim asserted against Geoscience falls within the scope of the arbitration agreement and is subject to arbitration.

34. For these reasons, the Court **GRANTS** the motions and **STAYS** all claims asserted against Choate and Geoscience pending arbitration. The Court **DENIES** the motions to the extent they seek to dismiss these claims. The Court further **ORDERS** that the parties shall notify the Court of the outcome of the arbitration proceeding within seven days after the arbitrator has issued a decision.

35. Defendants Dino M. Pappas, Vrettos Pappas Consulting Engineers, P.A., Tony F. Miller, and Miller Architecture have argued that this entire action should be stayed pending the outcome of any arbitration between Plaintiffs and Choate and Geoscience. (ECF Nos. 51, 66.) No formal motion to stay has been made, and the issue has not been briefed. Any motion to stay claims asserted against the other defendants, and a supporting brief, must be filed no later than 14 days after the entry of this Opinion.

This the 24th day of August, 2018.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases